IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ZACKARY C., | CV-22-065-M-KLD |
| Plaintiff, | ORDER |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act and his application for supplemental security income disability benefits under Title XVI of the Social Security Act. 42 U.S.C. §§ 401-33, 1381-1383f.

## I.  **Procedural Background**

Plaintiff protectively filed his applications for benefits under Titles II and XVI, respectively, of the Social Security Act on November 21, 2018, alleging disability since September 1, 2015. (Doc. 10 at 221, 227). Plaintiff's claims were denied initially and on reconsideration, and by an ALJ after an administrative hearing. (Doc. 10 at 75-76, 103-104, 108-120). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.   <u>Legal Standards</u>

### A.   Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. See *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

**B.     Disability Determination**

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) he suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). See also *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations.

20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, he must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation process.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the

national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III. __Discussion__

The ALJ followed the five-step sequential evaluation process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in in substantial gainful activity since his alleged onset date of September 1, 2015. (Doc. 10 at 111). At step two, the ALJ found that Plaintiff had the following severe impairments: autoimmune disorders, including Sicca syndrome and autoimmune encephalitis with persistent postural-perceptual vertigo/dizziness, and chronic baseline disequilibrium; chronic inflammatory demyelination polyneuritis; and attention hyper deficit hyperactivity disorder (ADHD). (Doc. 10 at 111).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in the Listing of Impairments, 20 C.F.R. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 10 at 112).

The ALJ then found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) with the following limitations:

> [H]e can stand and/or walk for up to four hours in an eight-hour workday, can occasionally balance on uneven surfaces, can occasionally stoop, kneel, crouch, or crawl, can occasionally climb stairs or ramps, can never climb ladders, ropes, or scaffolds, can occasionally be exposed to vibrations, can never be exposed to unprotected heights or moving machinery parts, can never operate a motor vehicle or heavy equipment, can frequently read small print and/or large print, and cannot perform work which requires viewing a computer screen and/or a video monitor. Plaintiff can understand and remember simple instructions, make simple work-related decisions, and carry-out simple instructions.

(Doc. 10 at 114). At step four, the ALJ determined that Plaintiff had no past relevant work. (Doc. 10 at 119). Proceeding to step five, the ALJ found based on the vocational expert's testimony that there were other jobs existing in the national economy that Plaintiff could perform (Doc. 10 at 119-20).

Plaintiff argues the ALJ's decision is not supported substantial evidence and raises several issues on appeal. First, Plaintiff maintains that the ALJ improperly assessed and rejected Plaintiff's hearing testimony. Second, Plaintiff contends that the ALJ issued an incomplete finding regarding Plaintiff's residual functioning capacity. Finally, Plaintiff argues that the ALJ improperly assessed and rejected the opinions of Plaintiff's treating physician.

### A.    Subjective Symptom Testimony

Plaintiff argues the ALJ did not provide clear and convincing reasons for discrediting his testimony as to the severity of his symptoms and limitations. The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, and there is no affirmative evidence of malingering, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of his symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)). In addition, the court is "constrained to review the reasons the ALJ

asserts." *Brown-Hunter,* 806 F.3d at 492. This means the court "may not take a general finding" by the ALJ "and comb the administrative record to find specific" evidence in support of that finding. *Brown-Hunter*, 806 F.3d at 494. Rather, the ALJ is responsible for identifying the testimony he finds not credible, and linking that testimony to the particular parts of the record supporting his determination. *Brown-Hunter*, 806 F.3d at 494.

Here, the ALJ found that Plaintiff met his initial burden because he produced evidence of medically determinable impairments that could reasonably be expected to cause the alleged symptoms. (Doc. 10 at 115). Accordingly, and because there is no evidence of malingering, the ALJ was required to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony about the severity of his symptoms.

At the hearing, Plaintiff testified that he began experiencing dizziness, problems with balance, and brain fog when he was about 13 or 14 years old, but that his symptoms improved after approximately a year of intense vestibular rehabilitation therapy. (Doc. 10 at 26). Plaintiff stated that his symptoms slowly returned in the fall of 2015 and progressively worsened. (Doc. 10 at 27). He described taking one community college class per semester during the 2019-2020 school year, and stated that although he has a driver's license, he drives infrequently and has relied on others to drive him to and from school. (Doc. 10 at

24-25, 36).  Plaintiff testified that he has "a floaty feeling" when walking, has difficulty tracking things with his eyes, feels unbalanced, sometimes falls into things, and experiences dizziness. (Doc. 10 at 27). Plaintiff explained that he does not use an assistive device to walk but will grab onto walls for balance when his symptoms are severe. (Doc. 10 at 27-28). Plaintiff stated that he has difficulty walking on even ground if there is visual stimulation, and has even more difficulty walking on uneven ground. (Doc. 10 at 29). Plaintiff stated that reading information on a computer is difficult because of the rapid eye movement required, and estimated that he can concentrate, read or use the computer for 10 to 15 minutes at a time before needing a break. (Doc. 10 at 29-31). Because of his symptoms, Plaintiff testified, he has not been able to take more than one class per semester. (Doc. 10 at 33). Plaintiff further testified that he has billed about two hours per week performing web and graphic design functions for his mother's business, but that he performs that work over a much longer period of time because he needs to take frequent breaks. (Doc. 10 at 34-35). Plaintiff explained that he no longer goes to the gym as part of his physical therapy because doing so exacerbates his symptoms, and said that he walks around the neighborhood occasionally but does not go hiking because he has difficulty walking on uneven ground. (Doc. 10 at 35-36).

The ALJ summarized Plaintiff's testimony, and found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Doc. 10 at 115).

It is well-established in the Ninth Circuit that "an ALJ may not 'reject a claimant's subjective complaints based *solely* on a lack of medical evidence to *fully corroborate* the alleged severity of pain'" and other symptoms or limitations. *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original) (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Under *Burch*, an ALJ cannot demand clear objective medical evidence to support each part of a claimant's subjective symptom testimony. *Smartt*, 53 F.4th at 498. But "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt*, 53 F.4th at 498 (citing for example *Burch*, 400 F.4th at 681 (affirming an ALJ's discounting of subjective claims of disabling pain based on objective medical evidence and a claimant's daily activities) and *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (affirming an ALJ's rejection of allegations of disabling pain based on normal physical examinations). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Smart*, 53 F.th at 499.

Here, the ALJ provided a thorough discussion of Plaintiff's medical records and permissibly found that his subjective symptom testimony was "not entirely consistent" with the objective medical evidence. (Doc. 10 at 116-19). The ALJ began by addressing the mental symptoms Plaintiffs alleged were generated by his physical impairments, such as "brain fog," "spaciness," or "cloudiness." (Doc. 10 at 116). The ALJ acknowledged that Plaintiff had been prescribed medication for this symptom, but cited several medical records reflecting that Plaintiff's treatment providers had "not observed signs consistent with cognitive or other significant mental dysfunction." (Doc. 10 at 116). Many of the medical records cited by the ALJ indeed reflect that Plaintiff's examination findings were routinely normal, including intact recent and remote memory, appropriate mood and affect, normal attention span and concentration, and normal language functions. (Doc. 10 at 533, 537, 541, 544, 549, 553, 557, 561, 565, 569, 573, 577 581, 766). The ALJ also cited a series of mental status examination findings showing that Plaintiff was alert and oriented to time, place, and person; had fluent speech and language "intact to repetition and comprehension." (Doc. 10 at 783, 786, 789). Contrary to Plaintiff's claims of brain fog, the ALJ noted that in an April 24, 2017 psychiatric evaluation report from the Mayo Clinic, Dr. Jeffrey Staab found that Plaintiff had no barriers to learning, and learned best by reading, seeing, listening and doing. (Doc. 10 at 116, 411). And while Plaintiff complained of dizziness during an August 7, 2020,

visit with Dr. John Sarkaria, the ALJ noted that Dr. Sarkaria's clinical findings
included normal cognitive function, normal coordination, and normal gait. (Doc.
19 at 116, 804-05).

As to Plaintiff's alleged physical limitations, the ALJ acknowledged that
some of the objective medical findings were consistent with Plaintiff's reported
symptoms, including for example a videonystagmography test revealing 26 percent
right RVR,[1] examination findings showing mild sway on Romberg testing,
bilaterally reduced deep tendon and other reflexes, slightly decreased sensory
organization with vestibular challenge, and abnormalities on head thrust testing
and with visual tracking and spontaneous nystagmus. (Doc. 10 at 118, citing Doc.
10 at 339, 424, 541, 553, 567, 573, 577, 581-82, 766, 812). However, the ALJ
found that on the whole, the objective medical findings did not support Plaintiff's
statements concerning the severity of his symptoms and limitations. (Doc. 10 at
118).  For example, contrary to Plaintiff's testimony that has difficulty walking,
feels unbalance, and sometimes falls into things, the ALJ cited medical records

---

[1] Videonystagmography (VNG) is used to determine whether an individual has a
disorder of the vestibular system that may be causing a balance or dizziness
problem. See  https://medlineplus.gov/lab-tests/videonystagmography-vng/ (last
visited July 5, 2023); *Contreras v. Berryhill*, 2017 WL 2798521 at n. 10 (C.D. Cal.
June 28, 2017).

showing no abnormalities of gait or station; normal results on Dix-Hallpike,[2] supine positional, and gaze evoked testing; and unremarkable physical examination findings on multiple occasions. (Doc. 10 at 118, citing 413, 637, 757, 766, 783, 786, 789, 793-94, 797-98, 801-02, 805, 813). Such contradictions are a clear and convincing reason for rejecting Plaintiff's subjective testimony.

To the extent Commissioner argues the ALJ also discounted Plaintiff's testimony because of "conservative treatment" (Doc. 14 at 10 n. 3), the ALJ did not articulate this as a specific reason for his adverse credibility finding. The Court is constrained to review the reasons provided by the ALJ, *Brown-Hunter*, 806 F.3d at 492, and "cannot substitute [its] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions." *Brown-Hunter*, 806 F.3d at 494-95; *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

Likewise, to the extent the Commissioner maintains the ALJ also relied on Plaintiff's "extensive activities" to support his adverse credibility determination (Doc. 14 at 11), the ALJ also failed to articulate this as a reason for discounting Plaintiff's testimony. An ALJ may discount a claimant's testimony based on daily activities that either contradict his testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the

---

[2] The Dix-Hallpike test, or maneuver, is used to check for a common type of vertigo called benign paroxysmal positional vertigo. See https://www.webmd.com/brain/dix-hallpike-test-vertigo (last visited July 5, 2023).

ALJ addressed Plaintiff's activities in conjunction with evaluating the paragraph B and C criteria of Listing 12.02 for attention-deficit/hyperactivity disorder (ADHD). (Doc. 10 at 116, 113), but did not identify those activities as basis for his subsequent adverse credibility determination.

At step three, the ALJ noted that Plaintiff alleged his impairments generated brain fog, which limited his ability to maintain attention and concentration, and summarized relevant portions of his testimony. (Doc. 10 at 113). For example, the ALJ pointed out that Plaintiff acknowledged taking approximately one college class per semester during the 2019-2020 school year, but that Plaintiff's transcript reflected he withdrew from several classes. (Doc. 10 at 113). The ALJ also noted that Plaintiff estimated billing about two hours per week working for his mother's business, but that Plaintiff reported it took him much more time to actually perform the work due to his need for frequent breaks. (Doc. 10 at 113). Finally, the ALJ referred to the fact that Plaintiff "was able to sit for and pass the driving examinations in both the State of California and the State of Montana." (Doc. 10 at 113). Bearing all of "this in mind, [and] because [Plaintiff was] diagnosed with and medicated for ADHD," the ALJ afforded Plaintiff "the benefit of any reasonable doubt" and concluded that Plaintiff had, at most, moderate limitations in the area of concentrating, persisting, or maintaining pace. (Doc. 10 at 113).

Although the ALJ addressed Plaintiff's various activities when evaluating his ability to concentrate, persist, and maintain pace, the ALJ did not reject Plaintiff's testimony based on those activities. To the contrary, the ALJ relied in large part on Plaintiff's testimony in finding that he had moderate limitations in concentration, persistence, and pace. When the ALJ evaluated Plaintiff's residual functional capacity later in the sequential evaluation process, he referred to his step three analysis but said nothing about discounting Plaintiff's testimony based on evidence of his daily activities. (Doc. 10 at 116).

Nevertheless, as discussed above, the ALJ permissibly cited inconsistencies between Plaintiff's subjective statements and the objective medical evidence and in doing so provided a clear convincing reason for discounting Plaintiff's testimony. See *Joshua P. v.* Kijakazi, 2021 WL 4330858, at *3 ( D. Or. Sept. 23, 2021) ("To avoid committing harmful error, an ALJ must provide only one clear and convincing reason, supported by substantial evidence, for discounting a claimant's symptom testimony.") (citing *Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017).

### B.   Residual Functional Capacity

#### 1.   Non-Exertional Limitations

Plaintiff argues the ALJ erred in assessing his residual functional capacity because he did not adequately account for his non-exertional limitations, including

particularly his limitations in concentration, persistence, or pace. When evaluating the severity of Plaintiff's mental limitations at step three, the ALJ found that Plaintiff had moderate limitations in maintaining concentration, persistence, or pace. (Doc. 10 at 113, 116). For purposes of translating the medical findings into specific functional abilities, the ALJ found that Plaintiff had the residual functional capacity to understand and remember simple instructions, make simple work related decisions, and carry out simple instructions. (Doc. 10 at 114, 116).

Plaintiff contends these functional restrictions to "simple" work tasks do not adequately account for the moderate mental limitations in concentration, persistence, and pace that the ALJ assessed at step three. Plaintiff relies on *Brink v. Comm'r Soc. Sec. Admin.*, 343 Fed.Appx. 211, 212 (9th Cir. 2009) (unpublished), which held that a limitation to "simple, routine, and repetitive" tasks did not adequately account for moderate limitations with concentration, persistence, or pace. In *Brink*, the ALJ accepted medical evidence establishing that the claimant had moderate limitations with concentration, persistence, or pace, but did not include those specific limitations in the hypothetical to the vocational expert. *Brink*, 343 Fed.Appx. at 212. Instead, the ALJ stated that the claimant would be restricted to "simple, repetitive work."  *Brink*, 343 Fed.Appx. at 212. The Ninth Circuit held that the restriction to simple, repetitive work did not adequately capture the claimant's moderate limitations in concentration, persistence, or pace,

reasoning that simple repetitive work could include assembly-line work requiring "extensive focus or speed." *Brink*, 343 Fed.Appx. at 212. Thus, the Ninth Circuit held that the ALJ's hypothetical to the vocational expert should have included both the limitation to "simple, repetitive work" as well as moderate limitations in concentration, persistence, or pace. *Brink*, 343 Fed.Appx. at 212.

The Commissioner counters, and the Court agrees, that this case is more analogous to the Ninth Circuit's published decision in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008). In *Stubbs-Danielson*, the claimant's physician found that the claimant had "slow pace, both with thinking and her actions" and moderate limitations in others mental areas, but nevertheless concluded the claimant "retained the ability to carry  out simple tasks" and follow short simple instructions. *Stubbs-Danielson*, 539 F.3d at 1173. The ALJ translated the physician's findings regarding slow pace and other mental limitations into a restriction limiting the claimant to "simple tasks." *Stubbs-Danielson,* 539 F.3d at 1174. The Ninth Circuit upheld the residual functional capacity assessment, finding that the ALJ "properly incorporated the limitations identified" in the medical opinion evidence, "including those related to pace and other mental limitations regarding attention, concentration, and adaptation." *Stubbs-Danielson*, 539 F.3d at 1174. Under *Stubbs-Danielson*, "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence or pace where

the assessment is consistent with the restrictions identified in the medical testimony." *Stubbs-Danielson*, 539 F.3d at 1174.

Here, as in *Stubbs-Danielson*, the ALJ properly incorporated Plaintiff's moderate limitations in concentration, persistence, or pace into the residual functional capacity by restricting him to understanding, remembering, and carrying out simple instructions, and making simple work related decisions. (Doc. 10 at 114, 116). Although there do not appear to be any mental residual functional capacity evaluations in the record, in April 2021 neurological consultative examiner Dr. Sarah Maze performed a mental status examination during which she found Plaintiff was alert, attentive and cooperative; his general fund of knowledge was excellent; and he understood and followed "even complex instructions and recall[ed] three out of three items at one and five minutes."  (Doc. 10 at 81). With respect to Plaintiff's cognitive functional limitations, Dr. Maze found that he "remains able to comprehend and follow simple instructions." (Doc. 10 at 813). The ALJ's finding that Plaintiff retained the ability to understand, remember, and carry out simple instructions and make simple work related decisions is consistent with, and supported by, Dr. Maze's opinion. As in *Stubbs-Danielson*, the ALJ properly translated Plaintiff's limitations in concentration, persistence, or pace into the only concrete restrictions available to him – those identified in Dr. Maze's opinion. See *Stubbs-Danielson,* 539 F.3d at 1174 (finding "[t]he ALJ translated

Stubbs-Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him – [one physician's] recommended restriction to 'simply tasks.'")

In response to the ALJ's hypothetical question summarizing Plaintiff's residual functional capacity, the vocational expert testified that Plaintiff would be able to perform light unskilled work as a hand packager, small products assembler, or electronics worker. (Doc. 10 at 41-42). Unlike *Brink,* the vocational expert in this case testified in response to questions by Plaintiff's attorney about the pace of these jobs that the electronics worker and small products assembler positions would not involve assembly line work. (Doc. 10 at 47-48). See *Brink*, 343 Fed. Appx. at 212 (finding that "repetitive, assembly-line work of the type described by the expert might well require extensive focus or speed).

For these reasons, the Court finds that the ALJ reasonably translated Plaintiff's moderate limitations in concentration, persistence or pace into the residual functional capacity assessment for understanding, remembering, and carrying out simple instructions, and making simple work related decisions.

### 2.   Exertional Limitations

The ALJ found Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) with several exertional limitations. (Doc. 10 at 114). Plaintiff asserts the ALJ erred in finding

that "he can stand and/or walk for up to four hours in an eight hour workday," and occasionally[3] balance on uneven surfaces, occasionally stoop, kneel, crouch, or crawl, occasionally climb stairs or ramps, and occasionally be exposed to vibrations. (Doc. 10 at 114). Plaintiff further asserts the ALJ erred in finding him capable of performing the lifting and carrying requirements of light work, which "involves lifting no more than 20 pounds at a time with frequent[4] lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b) and § 416.967(b).

Plaintiff argues these findings are not supported by substantial evidence, but a review of the record shows otherwise.

The ALJ's assessment of Plaintiff's exertional limitations is supported by the opinions of the state agency medical consultants, both of whom identified limitations consistent with the ability to perform light work. (Doc. 10 at 58-59, 85-86). The ALJ's findings are further supported by the April 2021 opinion of neurological consultative examiner Dr. Maze, who found that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; stand and walk six hours

---

[3] Social Security Ruling (SSR) 83-10 defines "occasionally" as "occurring from very little up to one-third of the time" during an eight-hour workday. SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983).

[4] SSR 83-10 defines "frequently" as "occurring from one-third to two-thirds of the time" during an eight-hour workday. SSR 83-10, 1983 WL 31251, at *6.

of an 8-hour workday; and was unable to frequently stoop but was able to kneel.[5]
(Doc. 10 at 118, 810-13).  The ALJ relied on all of these opinions when assessing
Plaintiff's residual functional capacity, and imposed even greater limitations on
Plaintiff's ability to stand or walk than those identified by the state agency
consultants and Dr. Maze. (Doc. 10 at 118) (finding Plaintiff should be limited to
standing or walking for up to 4 hours in an 8-hour workday instead of 6 hours).

The ALJ is responsible for weighing the medical opinions in the record and
resolving any conflicts in the medical evidence. See *Richardson v. Perales*, 402
U.S. 389, 399 (1971). Even if the record could support a different result, the Court
must affirm the ALJ's findings if they are supported by substantial evidence. See
*Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) ("[W]e  must uphold the
ALJ's decision where the evidence is susceptible to more than one rational
interpretation."). While the evidence in this case may be subject to more than one
rational interpretation, the ALJ's assessment of Plaintiff's exertional limitation is
supported by substantial evidence and must be upheld.

### C.    Medical Opinion Evidence

---

[5] Even if the ALJ erred in finding that Plaintiff was able to occasionally balance,
kneel, crouch, crawl, climb stairs or ramps, and be exposed to vibrations, any error
was harmless because those exertional activities are not present in the three
representative jobs identified by the vocational expert, and stooping is not present
in two of those jobs. See Inspector and Hand Packager, DICOT 559.687-074, 1991
WL 683797; Assembler, Small Products, DICOT 706.684-022, 1991 WL 679050;
Electronics Worker, DICOT 726.687-010, 1991 WL 679633.

Plaintiff argues the ALJ failed to give proper weight to the opinion of Dr. Ying Peng, a neurologist who treated Plaintiff between October 2018 and December 2020. (Doc. 10 at 626-38, 781-806).

For all claims filed after March 27, 2017, the Social Security Administration has amended the rules regarding the evaluation of medical opinion evidence at the administrative level. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Because Plaintiff filed his claim for disability benefits in November 2018, the amended regulations apply in this case.

The amended regulations do away with the traditional hierarchy between treating, examining, and non-examining physicians, and instead direct the ALJ to consider all medical opinions and prior administrative medical findings, and evaluate their persuasiveness using several listed factors. 20 C.F.R. §§ 404.1520c(a), 416.920(a). Those factors include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920(c). The two most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920(a).

While the new regulations eliminate the hierarchy between treating, examining, and non-examining medical sources, the ALJ must still provide legally

sufficient reasons supported by substantial evidence for finding a medical opinion unpersuasive. See *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. Apr. 2022) (even under the new regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence"); *Beason v. Saul*, 2020 WL 606760, *3 (C.D. Cal. Feb. 7, 2020). The "new regulations still require the ALJ to explain his or her reasoning to specifically address how he or she considered the supportability and consistency of the medical opinion." *Brandee M.*, 2021 WL 2781803, at *3 (citing 20 C.F.R. §§ 404.1520c, 416.920c). While the ALJ must explain how he considered the supportability and consistency factors in the decision, the ALJ is not generally required to explain how he considered the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920(b)(2).

In April 2021, Dr. Peng completed a neurological evaluation form on which he stated that Plaintiff was "disabled due to mental and physical fatigue and poor sleep pattern and poor emotional regulation." (Doc. 10 at 809). Plaintiff argues the ALJ did not adequately explain why he found Dr. Peng's opinion unpersuasive. The Commissioner counters under the new regulations, an ALJ is not required to address an opinion stating that a claimant is disabled. The regulations provide that an opinion that a claimant is disabled or not able to work is "inherently neither valuable nor persuasive," and the ALJ need not prove any analysis about how such

evidence is considered. See 20 C.F.R. §§ 404.1520b(c), 416.920b(c). A "medical opinion" is a statement from a medical source about what a claimant can still do despite his impairments, and whether the claimant has one or more impairment-related limitations or restrictions in his ability to perform the physical or mental demands of work activities. 20 C.F.R. §§ 404.1513(a)(2), 416912(a)(2).

Because Dr. Peng did not provide an opinion on Plaintiff's specific work-related functional limitations, the ALJ correctly found that his statement addressing the ultimate issue of disability was not a medical opinion requiring further analysis. (Doc. 10 at 808-09). See *Mikey W. v. Saul*, 2021 WL 9763049, at *5 (E.D. Wash. July 13, 2021). The ALJ nevertheless considered Dr. Peng's opinion but found it unpersuasive because "the objective evidence has rarely, if ever reflected mental fatigue, or poor emotional regulation, let alone over a period lasting at least 12 consecutive months." (Doc. 10 at 116). Plaintiff does not point to any evidence that contradicts or undermines the ALJ's reasoning on this point. The ALJ further noted that when Dr. Peng last examined Plaintiff in December 2020, his objective clinical findings included alert mental status, cooperative, oriented x 4, normal speech, normal cognitive function, intact sensation, intact strength, normal coordination and normal gait. (Doc. 10 at 116-17, 805). The rest of Dr. Peng's treatment notes include similar objective findings that are not consistent with his statement that Plaintiff was disabled.

Notably, Plaintiff does not point to any specific functional imitations identified in Dr. Peng's opinion that he claims the ALJ should have incorporated into the residual functional capacity. See *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (holding that where physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions."); *Merritt v. Colvin*, 572 Fed. Appx. 468, 470 (9th Cir. 2014) (concluding the ALJ did not err by failing to fully discuss a doctor's examinations records because the claimant did not point to any particular record from the doctor that would establish the existence of work-related limitations).

Finally, to the extent Plaintiff argues the ALJ erred by not explaining how he weighed every factor under 20 C.F.R. § 404.1520c(c)(1)-(5), the Court is not persuaded. Under the new regulations, the ALJ must consider and explain the supportability and consistency factors in the decision, and may, but is not required to, explain he considered the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920(b)(2). Accordingly, the Court concludes Plaintiff has not shown that the ALJ erred in his evaluation of Dr. Peng's opinion.

**IV.**    <u>**Conclusion**</u>

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of prejudicial legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is AFFIRMED.

DATED this 29th day of August, 2023

Kathleen L. DeSoto
United States Magistrate Judge